1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRANCISCO CORTEZ, | ) | Civil No. 10cv1473-L(WMc) |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

This action against the United States was brought pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiff Francisco Cortez, a law enforcement officer employed by the California Department of Justice, Bureau of Narcotics Enforcement, was allegedly unreasonably detained, arrested and subjected to excessive force by agents of the United States Department of Homeland Security, United States Customs and Border Protection ("Border Patrol Agents" or "Agents"). Defendant filed a motion to dismiss for lack of subject matter jurisdiction arguing that it is immune from suit pursuant to the discretionary function exception and, alternatively, a motion for summary judgment on the merits, arguing that the Border Patrol Agents' acts were justified. Plaintiff opposed the motions and Defendant replied. For the reasons which follow, Defendant's motions are **DENIED**.

According to the allegations in the complaint, Plaintiff was returning from his duty shift in El Centro, California and was driving to San Diego, California shortly after midnight on

September 26, 2009.  He sped past a marked U.S. Border Patrol vehicle on Interstate 8.  The vehicle followed him, but did not take any other action and eventually backed away.  Border Patrol Agent Beata Kobylecka, who was inside the Border Patrol vehicle, radioed ahead to the Pine Valley Border Patrol Checkpoint because she knew that Plaintiff would pass it shortly.

Plaintiff was stopped at the Pine Valley checkpoint.  Border Patrol Agent David C. Fulton asked Plaintiff about his citizenship, where he was going, and why.  Plaintiff responded to the questions, but when he asked for his driver's license, he asked why it was requested.  Agent Fulton then ordered Plaintiff to go to secondary inspection.  Plaintiff orally identified himself as a law enforcement officer and explained that his car was an unmarked official vehicle.  Agent Fulton did not ask to see Plaintiff's credentials but again ordered him to secondary inspection.

At secondary inspection, Plaintiff was aggressively approached by Border Patrol Agent Benjamin W. Metz.  Plaintiff again identified himself as a law enforcement officer and explained he thought he had been ordered to secondary inspection only because he questioned the reason to see his driver's license.  Agent Metz told Plaintiff to "shut up," pointed out that Plaintiff was at "his check point," and asked Plaintiff for consent to search the trunk of his car.  Plaintiff again stated that he was a law enforcement officer and that his car was an unmarked official vehicle.  He declined to consent.

At that time, Border Patrol Agents Kobylecka, Fulton, and Patrick J. Kennedy also arrived to the secondary inspection area.  Plaintiff complained to all of them about the rude and unprofessional treatment he had received. When Plaintiff asked why his detention was prolonged by secondary inspection, Agent Metz informed him he was being detained because of his attitude, and because he was acting suspiciously and giving elusive answers.  Agent Kobylecka said that she had observed him drive over 100 m.p.h.  Plaintiff questioned the veracity of the Agents' statements and legality of their actions.  An argument ensued about Plaintiff being off duty and on the Agents' "turf."

Agent Metz then ordered Plaintiff out of his car in order to search it.  Plaintiff again declined to consent, and Agent Metz removed him from the car.  Plaintiff, who had his duty weapon on his belt, became afraid that the situation would escalate to the use of deadly force

when the Agents observe his gun. He therefore informed the Agents that he was a law enforcement officer and that he was armed. Agent Metz pulled Plaintiff out of the car, placed Plaintiff's hands on his head and kicked his ankles apart. When the Agents saw that Plaintiff was armed, they assumed a bladed stance in preparation of drawing their weapons. Agent Kennedy removed Plaintiff's gun, and the Agents then relaxed their bladed stance. When Agent Metz moved Plaintiff's hands behind him as if to handcuff him, Plaintiff asked why he was being arrested. Agent Metz responded that Plaintiff was at a Border Patrol checkpoint, and that Plaintiff was not in charge. When Plaintiff told Agent Metz that in his law enforcement experience, handcuffing him would constitute an arrest rather than a detention, Agent Metz released Plaintiff's hands.

Plaintiff was searched and ordered to sit in a chair outside while a canine unit inspected his car. His request to stand was met with the threat of physical force from Agent Metz and Kennedy. Plaintiff also was not allowed to call his supervisor during the search. The search resulted in no contraband. Plaintiff then asked for his gun so that he could leave, but was told he could not leave until a Border Patrol supervisor arrived.

Subsequently, Supervisory Border Patrol Officer George Prat reviewed Plaintiff's badge and credentials. He apologized to Plaintiff for his detention and the manner in which it was carried out, and Plaintiff was released. His detention lasted approximately 45 minutes.

Plaintiff filed a complaint against the United States under the FTCA alleging state law claims for false imprisonment, assault and battery and negligence. Defendant argues that the court lacks subject matter jurisdiction over Plaintiff's claims, or in the alternative, that summary judgment should be entered in Defendant's favor.

The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. of N.Y.*, 790 F.2d 769, 774 (9th Cir. 1986). It possesses only that power authorized by the Constitution or a statute. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). A federal court must satisfy itself of its jurisdiction over the subject matter before proceeding to the merits of the case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999). Accordingly, the court first considers the jurisdictional issue.

The United States, as a sovereign entity, is immune from suit unless it has consented to be sued by waiving its sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The waiver of sovereign immunity under the FTCA is strictly construed. *Honda v. Clark*, 386 U.S. 484, 501 (1967); *United States v. Sherwood*, 312 U.S. 584, 587 (1941). The terms of the waiver determine the scope of the court's jurisdiction to hear the case. *Sherwood*, 312 U.S. at 586-87. The FTCA waives sovereign immunity for claims based on negligent or wrongful acts of federal government employees where a claim would exist under state law, if the government were a private party. 28 U.S.C. §§ 1346(b), 2671-80. The FTCA includes a number of exceptions to the waiver of sovereign immunity, including the discretionary function exception. *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008). If, as Defendant argues, the discretionary exception applies here, the United States has not waived sovereign immunity, and the court lacks subject matter jurisdiction over the claims. *See Kelly v. United States*, 241 F.3d 755, 760 (9th Cir. 2001).

Defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), which provides for dismissal if the court lacks subject matter jurisdiction. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because Defendant bases its motion on affidavits and documents outside the complaint, the motion is construed as a factual rather than a facial attack.

Generally, on a 12(b)(1) motion, the court may consider "evidence regarding jurisdiction and . . . rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *see also Roberts v. Carrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). In such cases, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment [and] need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted).

However, where "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits," the

court should either "employ the standard applicable to the motion for summary judgment," *Autery*, 424 F.3d at 956, or "assume the truth of the allegations in a complaint unless controverted by undisputed facts in the record," *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks, brackets, ellipsis and citations omitted). In cases under the FTCA, merits are often closely intertwined with jurisdiction. *Gould Elec., Inc. v. United States*, 220 F.3d 169, 178 (3rd Cir. 2000); *see also Autery*, 424 F.3d at 956; *Safe Air for Everyone*, 373 F.3d at 1039 (intertwined where statute provides the basis for both subject matter jurisdiction and plaintiff's substantive claim).

In the present case, the discretionary function exception and the merits of Plaintiff's claims are intertwined. Some of the facts of Plaintiff's case are relevant to both inquiries and are disputed. In cases such as this, where the court employs the summary judgment standard, "[t]he court must not weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue for trial." *Autery*, 424 F.3d at 956 (internal quotation marks and citation omitted).

The discretionary function exception provides immunity from suit for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Terbush*, 516 F.3d at 1129. The burden of proving that the discretionary function exception applies is on the defendant. *Vickers v. Untied States*, 228 F.3d 944, 950 (9th Cir. 2000).

"The discretionary function exception marks the boundary between Congress' willingness to impose tort liability on the United States and the desire to protect certain decision-making from judicial second-guessing." *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006). Its purpose is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of action in tort." *Id.* quoting *Untied States v. Varig Airlines*, 467 U.S. 797, 814 (1984). "Therefore the discretionary function exception will apply if the discretionary decision made is a permissible exercise of policy judgment." *Conrad*, 447 F.3d at 765.

A two-step analysis determines whether the discretionary function exception applies. *See Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).

> First, we must determine whether the challenged actions involve an element of judgment or choice. This inquiry looks at the nature of the conduct, rather than the status of the actor and the discretionary element is not met where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. If there is such a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive. [¶] When a specific course of action is not prescribed, however, an element of choice or judgment is likely involved in the decision or action.

*Terbush*, 516 F.3d at 1129 (internal citations and quotation marks omitted).

Defendant points to Chapter 13 of the Border Patrol Handbook (Def.'s Exh. C ("Handbook")) and Border Patrol Checkpoint Operations and Guidelines (Def.'s Exh. B ("Guidelines")) to argue that the Agents' actions involved the exercise of choice or judgment. Plaintiff does not dispute this. Particularly with respect to the duration of Plaintiff's detention or arrest and the use of force, the rules leave room for discretion. The first step of the analysis is therefore met.

> Upon determining that the first step of the analysis is met, the court must consider whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy. Public policy has been understood to include decisions grounded in social, economic, or political policy.

*Terbush*, 516 F.3d at 1129 (internal citations and quotation marks omitted). The following principles guide the analysis:

> [I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations. [Thus, w]hen established governmental policy, as express or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. [¶] . . . The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*United States v. Gaubert*, 499 U.S. 315, 325 (1991), quoted in *Terbush*, 516 F.3d at 1130.

/ / / / /

Plaintiff argues that the Agents' exercise of discretion did not involve the kind of judgment which the discretionary function exception was intended to shield. Although the decisions of front-line law enforcement officers are not necessarily excluded from discretionary function, *see Gaubert*, 499 U.S. at 325 (status of the actor does not govern whether the exception applies) & *Conrad*, 760 F.3d at 765-67 (decision when to arrest a suspect and present him for arraignment within the discretionary function exception), law enforcement decisions are not *per se* subject to the exception, *see id.* at 767 (agent exploiting authority); *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (abusive interrogation and investigation); *Garcia v. United States*, 826 F.2d 806, 809 (9th Cir. 1987) (excessive use of force by a border patrol agent).

Government employee conduct is shielded by the discretionary function exception when the "exercise of discretion [is] in furtherance of public policy goals." *Gaubert*, 499 U.S. at 334. Accordingly, the court looks to the government policy, as expressed or implied by the Handbook and Guidelines. *See id.* at 325, 332-33. "It is the policy of U.S. Customs and Border Patrol Protection (CBP) to use Border Patrol checkpoints to restrict the routes of egress from the border area where appropriate and thereby create deterrence to the initial illegal entry." (Guidelines ¶ 2.1; *see also* Handbook ¶ 13.1.) "The primary purpose of a traffic checkpoint operation is to apprehend illegal aliens and smugglers who have managed to evade apprehension at the border and are attempting to travel to interior locations." (Handbook ¶ 13.1(d).)

"Traffic checkpoints are a Border Patrol operation that consists of examining occupants of vehicles on the roads and highways as to their right to be or remain in the United States." (Handbook ¶ 13.1(c).) "No person or vehicle is exempt from inspection procedure at Border Patrol checkpoints. The only exceptions shall be cases where health, safety or exigent circumstances exist." (Guidelines ¶ 2.6.) Agents are to follow certain procedures at the Border Patrol checkpoints, including the following:

> A proper approach, a thorough but rapid inspection, and a quick decision to conduct further interrogation or allow a vehicle to proceed are the requirements of a successful traffic check operation. Courtesy to the traveling public is mandatory, and every effort must be made to avoid antagonizing the public at all times. Although agents never need to apologize for performing their duties, they must maintain a respectful attitude at all times.

(Handbook ¶ 13.6(c).) To assure that the checkpoint operates safely, "[a]nytime questioning goes beyond the routine, vehicles should be directed out of the lane of traffic and into the secondary inspection area." (*Id*. ¶ 13.7(d); *see also* Guidelines ¶ 6.13.4.)

Based on the foregoing, the Border Patrol Agents' decision to stop and question Plaintiff, and to direct him to secondary inspection when he questioned the request to see his driver's licence and indicated he was a law enforcement officer, were taken within the purview of their Handbook and Guidelines, and the policies behind them. The answer is not as clear with respect to the actions taken at secondary inspection.

According to Plaintiff's version of events, the reason for his continued detention, search and use of force at the secondary inspection area had nothing to do with the public policy goals expressed in the Guidelines and Handbook. Some relevant facts of what occurred at secondary inspection are disputed.[1] Because the merits of Plaintiff's claims are intertwined with the jurisdictional issue, the court does not weigh this evidence, but employs the summary judgment standard. *Autery*, 424 F.3d at 956. When ruling on a summary judgment motion, the nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a summary judgment motion. *Id*.

According to Plaintiff's evidence, when he arrived at the secondary inspection area, the Agents did not ask to see his law enforcement credentials, although he informed them he was a law enforcement officer. (Cortez Decl. at 5.) Instead, his detention was extended, he was removed from his car and searched, and his official vehicle was subjected to a canine search. (*Id*. at 3-5.) These actions were taken because, in the Border Patrol Agents' words, "this is our

---

[1] For example, Plaintiff asserts that he informed Agent Metz that he was a law enforcement officer, but was not asked for his law enforcement credentials. He claims he was not asked for his credentials until after he had been forcefully removed from his car, searched and a canine search of the car was being performed. (Cortez Decl. at 5.) According to the Agents, Agent Metz asked Plaintiff for his law enforcement credentials before he removed Plaintiff from his car. (Metz Decl. at 2; Kobylecka Decl. at 2.) It is also disputed whether Plaintiff produced his credentials when he was first asked for them. (*Cf*. Cortez Decl. at 5 *with* Metz Decl. at 3; Kobylecka Decl. at 2.)

turf and you're not in charge here."[2] (*Id.* at 4; *see also id.* at 3 (Agent Metz "did not care" who Plaintiff was, he was at "his check point") & 5 (Agents were "in charge," not Plaintiff).) Defendant does not present any argument how this constituted an exercise of discretion in furtherance of public policy goals expressed in the Handbook and Guidelines. "There is a difference between a case . . . in which an agent may validly claim that she [or he] exercised discretion (even if she [or he] has abused it) and a case in which the agent in not exercising discretion but rather exploiting the authority she [or he] wields . . .." *Conrad*, 447 F.3d at 767 (internal citation omitted); *see also Sabow*, 93 F.3d at 1454 (action "had no legitimate policy rationale").

Based on the foregoing, there is a genuine issue of fact whether the Agents exercised discretion at the secondary inspection area in furtherance of the pertinent public policy goals. Accordingly, Defendant has not met his burden of showing that the discretionary function exception applies in this case. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore **DENIED**.

In the alternative, Defendant seeks summary adjudication of Plaintiff's claims on the merits. (Def.'s Mem. of P. & A. at 2.) Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). If summary judgment is not rendered on the whole action, the court "may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. Proc. 56(g).

Summary judgment or adjudication of issues is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the

---

[2] Unlike other parts of Plaintiff's case, which the Agents expressly dispute in their declarations, they do not dispute that they made these statements.

case. *Anderson*, 477 U.S. at 248.  A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The burden on the party moving for summary judgment depends on whether it bears the burden of proof at trial.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  When the moving party would not bear the burden at trial, then he can meet the burden on summary judgment by pointing out the absence of evidence with respect to any one element of the claim or defense.  *See Celotex*, 477 U.S. at 325.

If the movant meets his or its burden, the burden shifts to the nonmovant to show summary adjudication is not appropriate. *Celotex*, 477 U.S. at 317, 324.  The nonmovant does not meet this burden by showing "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  The nonmovant must go beyond the pleadings to designate specific facts showing there are genuine factual issues which "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

When ruling on a summary judgment motion, the nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in his or its favor. *Anderson*, 477 U.S. at 255.  Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a summary judgment motion. *Id*.

Plaintiff alleged claims for false imprisonment, assault and battery, and negligence.  "In assessing the United States' liability under the FTCA, we are required to apply the law of the state in which the alleged tort occurred." *Conrad*, 447 F.3d at 767.  The parties agree that California law applies in this case.  This means that the court must apply the law a California

/ / / / /

court would apply in an analogous tort action, including federal law. *Rhoden v. United States*, 55 F.3d 428, 431 (9th Cir. 1995)

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485, 496 (2000). Under California law, "[o]nce the plaintiff has proven the elements of the tort, the defendant has the burden to establish that the detention or arrest was legally justified." *Rhoden*, 55 F.3d at 430, citing *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 591-92 (1979). "Under California law, a California court would apply federal law to determine whether an arrest by a federal officer was legally justified and hence privileged." *Rhoden*, 55 F.3d at 431.

Plaintiff does not dispute that the Agents had the right to briefly stop him at the checkpoint, ask him about his citizenship and refer him to secondary inspection. (Opp'n at 14.) He challenges the duration of his detention or arrest after he was referred to secondary inspection. (*Id.*) Defendant does not contend that Plaintiff cannot establish the elements of false imprisonment, but claims that it is entitled to summary adjudication because the Agents' actions complied with federal law. (Def.'s Mem. of P.&A. at 18.)

The parties agree that the relevant standard for legal justification of Plaintiff's detention is reasonable suspicion. (*Id.* at 19; Opp'n at 14-15.)

> Articulating precisely what "reasonable suspicion" . . . mean[s] is not possible. [It is a] commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standard[ is] not readily or even usefully, reduced to a neat set of legal rules. We have described reasonable suspicion simply as a particularized and objective basis for suspecting the person stopped of criminal activity. . . . We have cautioned that [this] legal principle[ is] not [a] finely-tuned standard[], comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. [It is] instead [a] fluid concept[] that take[s its] substantive content from the particular contexts in which the standard[ is] being assessed. . . . [¶] The principal components of a determination of reasonable suspicion . . . will be the events that occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion . . ..

*Ornelas v. United States*, 517 U.S. 690, 696-97 (1996) (internal citations, quotation marks, brackets and ellipses omitted). In determining reasonable suspicion, the court "must look at the

totality of the circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks and citations omitted). In determining whether an officer had reasonable suspicion, "due weight must be given not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The court

> will defer to officers' inferences only when such inferences rationally explain how the objective circumstances "arouse[d] a reasonable suspicion that *the particular person being stopped* ha[d] committed or [was] about to commit a crime." "[W]hile an officer may evaluate the facts supporting reasonable suspicion in light of his experience, experience may not be used to give the officers unbridled discretion in making a stop." . . . Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity.

*United States v. Manzo-Jurado*, 457 F.3d 928, 934-35 (9th Cir. 2006) (emphasis and brackets in original) quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*).

As discussed in the context of the discretionary function exception, it is disputed when, after Plaintiff identified himself as a law enforcement officer to Agent Metz, he was asked for his badge and credentials, whether Plaintiff complied with this request when he was first asked, and whether Plaintiff's detention at secondary inspection was extended because the Border Patrol Agents were asserting their "turf" against an off-duty California law enforcement officer. The duration of Plaintiff's detention is also disputed. (*Cf.* Cortez Decl. at 5-6 *with* Metz Decl. at 4.) All of the foregoing is relevant to the determination whether the Agents had reasonable suspicion to detain Plaintiff and prolong his detention.

A dispute about a material fact such as the officers' reasonable suspicion is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Because a reasonable jury could believe Plaintiff's version of events and conclude that Agents lacked reasonable suspicion, Defendant's motion for summary adjudication of the false imprisonment claim is **DENIED**.

/ / / / /

Defendant next seeks summary adjudication of the assault and battery claim. To establish a claim for assault and battery by a law enforcement officer under California law, the force used against the plaintiff to arrest or detain him must be unreasonable. *See* Jud. Council of Cal., Civ. Jury Instr. 1305. In determining whether the force used was reasonable, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Tekle v. United States*, 511 F.3d 839, 844 (9th Cir. 2007), quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also* Jud. Council of Cal., Civ. Jury Instr. 1305.

> The first factor in determining whether the force used was excessive is the severity of the force applied. The second factor, and the most important, is the need for the force. The amount of force used is permissible only when a strong government interest compels the employment of such force. Factors to be considered in determining the need for the force include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Finally, [the court] must balance the force used against the need, to determine whether the force used was greater than is reasonable under the circumstances. This determination requires careful attention to the facts and circumstances of each particular case and a careful balancing of an individual's liberty with the government's interest in the application of force. Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be granted sparingly. This is because police misconduct cases almost always turn on a jury's credibility determinations.

*Tekle*, 511 F.3d at 844-45 (internal quotations marks and citations omitted); *see also* Jud. Council of Cal., Civ. Jury Instr. 1305.

Defendant argues that summary judgment should be entered in its favor because the force used was reasonable under the circumstances. (Def.'s Mem. of P.&A. at 22-24.) "Plaintiff's sole contention that excessive force was used stems from his allegation that he observed Kennedy and another officer . . . take a 'bladed stance,' which, as an experienced law enforcement officer . . ., [he] knows is a 'tactical stance' taken by officers when a confrontation is expected and your weapon is about to be drawn, as he fully expected to happen." (Opp'n at 16; Compl. at 6.) This occurred when Agent Metz was removing Plaintiff from his car, Plaintiff announced he was an armed law enforcement officer, and the Agents noticed his service weapon. (Compl at 6; Cortez Decl. at 4-5.) After Plaintiff's weapon was removed, the Agents

relaxed their "bladed stance." (Compl. at 6; Cortez Decl. at 5.) Plaintiff argues that the Agents' assumption of the bladed stance constituted "the use of a firearm even if it was interrupted." (Opp'n at 16.) Defendant does not address these facts or argument in its briefs. "[P]ointing of a gun at someone may constitute excessive force, even if it does not cause physical injury." *Tekle*, 511 F.3d at 845, citing *Robinson v. Solano County*, 278 F.3d 1007, 1014-15 (9th Cir. 2002) (*en banc*); *see also Tekle*, 511 F.3d at 847. Like every other use of force, it must be justified by the circumstances. *Robinson*, 278 F.3d at 1014.

As discussed in the context of the false imprisonment claim, there is a genuine issue of fact whether the Agents had reasonable suspicion to prolong Plaintiff's detention. If they did not, a reasonable jury could find that the Agents' assumption of the bladed stance against Plaintiff was an unreasonable use of force. Based on the foregoing, Plaintiff's declaration raises a genuine issue of material fact regarding the reasonableness of the force used against him. Defendant's motion for summary adjudication of the assault and battery claim is therefore **DENIED**.

Last, Plaintiff's negligence claim is based on the same facts and legal theories as the false imprisonment and assault and battery claims. (*See* Opp'n at 16 n.8.) Defendant's motion for summary adjudication of the negligence claim is therefore also **DENIED**.

For the reasons stated above, Defendant's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment is **DENIED**. Plaintiff's request to defer ruling on Defendant's motion for summary judgment until after discovery is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATED: May 5, 2011

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE, Jr.
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL